Now we come to the last item on this morning's calendar, United States v. Feng Wan Lu. Good morning. I notice that most of the lawyers are wearing red ties today. Is there some significance to that? The trial lawyers wear red ties. The President and the government people wear blue ties. I'm not sure what book we're looking at. I saw the two of you sitting there. I thought that was the uniform of the day. The government's wearing red too? Well, Gary and I consulted before today to, you know, coordinate our wardrobe. Same suit? Almost same tie. May it please the Court, I am Bruce Fetter. I represent the appellant. The reason we're here, I'm here, is to ask the Court to reverse the findings of the trial court in regard to whether or not an LLC does not get the protection of the Fifth Amendment and that it should not be viewed as a collective entity but to be viewed in the same fashion as a sole proprietorship under the law. The Court had ordered on Friday of last week when I came home from Paris, not Kentucky, that we be available to address three cases. The Couch case, the Manges case, and the Daffin case. So let me, I guess, launch into those first. May I just ask a question before you do because it would relate to how those cases affect things? I just want to understand the scope of the appeal in terms of the documents because some of the documents were protected under attorney-client privilege. Are those documents kind of off the table, if you will, and those are not the documents we're talking about? My understanding, and I've tried to read the record as best I can, but I'm a substitute lawyer here so I didn't get the benefit of going through this at the trial level. My understanding is that the government in some fashion has conceded some documents. The appellant has given some obviously producible documents to the government and that the only real issue that we were before these, that order came on Friday, the only issue we're here to discuss is whether or not an LLC gets the treatment as a collective entity and therefore no Fifth Amendment or whether or not it should be treated as a sole proprietorship. What's the only issue? Well, that was the only issue that was briefed. Well, let me just tell you just to clue you in so that you're not, why I think Couch has some relevance, and the question is whether, well, let me just clarify. The documents we're talking about were in the possession of, is it Gunderson? Yes. They're not in the possession of Lew, correct? No. So that's what my question, and maybe you can now jump to Couch's. If the documents are not in her possession, why doesn't Couch suggest that there is not a Fifth Amendment privilege under those circumstances? I had a feeling that's what these cases were cited for. Let me try to address it. I would have a great concern with a ruling like that, because unlike Couch, where the taxpayer directly gave the documents to the accountant for purposes, strict purposes of accountant-type actions, in this case, every document, at least the documents were produced to Gunderson at the request, advice order of Martin Lieberman, who was Ms. Lew's attorney. Mr. Lieberman retained Gunderson pursuant to a written retention agreement. As a matter of fact, two of them that are in the record. The first retention agreement was to ask Gunderson to look at these documents and to help him in a pending civil forfeiture action determine from her financial records how the roughly $200,000 that had been found could be justified as coming from legitimate sources. That's what their job was, and that's what they did is that they looked at the 2002 and 2003 financial records of Ms. Lew and rendered advice to Mr. Lieberman as to how these records would justify the $200,000 as a legitimate source. The problem with Couch would be the following. If we are going to find in this case where a lawyer advises his client to take financial records that she would have a Fifth Amendment privilege for, at least as to actor production, and tells her to go and give them to an agent of that lawyer, Gunderson, to help to have Gunderson help him get advice, then what the Court would be doing is telling every lawyer in this country, or at least in the Ninth Circuit, that you better not have your clients ever give up documents to the lawyer, to the accountant, to any kind of agent of that lawyer. Are you suggesting that when the client passes financial information to her accountant through her lawyer, that that provides a buffer that, therefore, the government can't touch it? So, therefore, why wouldn't everybody send their accounting problems through their lawyer, and that way they'd be fully protected, right? It's not the law, and it's not what I'm suggesting. That would be a ruse. This is not a ruse. And there's a distinction here, and it gets into the issues raised in the Torf case, which I have given the Court a copy of this morning. It was a case that was used in the briefs at the trial level. But Torf essentially says as follows. It's a Ninth Circuit case, 2004. In that case, there was an environmental problem, and an investigator was retained to help to investigate the case by the lawyers involved. What's the name of the case again? It's In Re Grand Jury, and then in parentheses it's Torf, T-O-R-F. It's probably the fourth or third. Where is this? It's the last one, I think. The last one, okay. It's the last one that we have. That's the stuff we just got this morning? Yes, sir. If you'll give me a chance, I'll try to explain why I had to give you all this stuff. Well, let me ask you a question. When I went through this stuff, I got the impression that the lawyer, Lieberman, in preparing to represent his client, asked Gunderson to do some forensic accounting work. Yes. Right? Yes. In other words, he was working for the lawyer, and he's going to then turn over to the lawyer what his views were and express his opinions, I suppose. Now, is this what you're talking about? Yes. Or are you talking about documents that the client gave the lawyer, and the lawyer then turned them over to the accountant? My understanding is money is seized, civil forfeiture action is initiated. No, but I understand. I just want to know, what are we talking about? The lawyer, again, my understanding is lawyer tells Ms. Lu, I've retained Gunderson, give them all the documents that they want in order to help them help me analyze your financial records so that we can fight this litigation, this civil forfeiture. Okay. And that's what they do. So are you saying that those documents that Lu gave Gunderson are somehow protected? Yes, because of the following. I don't think you're going to get very far with that. Now, as far as how about Gunderson's report to the lawyer? Is that involved here? No. No? Not that I, well, I don't think it's part of this appeal. It may be an issue someday in the trial court. See, this thing is so confused. Let me try that for you. But your position is that if the lawyer is trying to do legal work and give advice and they turn documents over to an accountant as an expert or a consultant, that that shouldn't somehow, the documents shouldn't be deemed to be in the possession of the consultant for purposes of gift amendment privilege. Is that your position? Let me quickly try to get their judgment. The documents in Ms. Lu's possession warrant an act of production privilege if they are deemed to, if her LLCs are deemed to be similar to or equivalent to sole proprietorships where those are private papers that the Fifth Amendment attaches to or at least the act of production under the Fifth Amendment attaches to under Hubble. If you take those same documents and you give them to your lawyer or your lawyer's agent, they don't lose that Fifth Amendment right. Similarly, when you give them to your lawyer or your lawyer's agent, they are now being used to render legal advice. So you have the potential protection of not only the attorney-client privilege but the work product privilege. What Torf said is if you give documents to a lawyer or their agent and they are for one purpose only, which is rendering legal advice, then they're protected. But if you give them to your lawyer or their agent and they end up being used for two things, one that would be privileged and one not, then under this dual-purpose doctrine, if you gave those documents to the lawyer, quote, because of, end quote, the legal work, they are protected. And similarly in this case, Ms. Liu at her lawyer's request, demand, whatever, gives the financial documents to Gunderson for them to give advice to Marty Lieberman. They do. But in the process, they also apparently advise her to file an amended 2002 tax return and that they will file the 2003 tax return. So you have a dual-purpose issue here. The papers originally, as protected by the Fifth in Liu's possession, are given to the accountants because of her lawyer's request, and they are used initially for purposes that they would enjoy the Fifth Amendment protection. Now, did this accountant use that information to file tax returns for her? I'm sorry? Did the accountant use the information turned over to him to prepare tax returns? It would appear. You're not saying the tax returns are protected under the definition? Well, the tax returns, you're not being a tax lawyer. There is a law. There are different accountants here, don't you? I'm sorry? Two different accountants. Right. Well, Gunderson is the forensic accountant. Ms. Liu is asked to give them all of her financial records for them to leaf through and figure out what they need to do to help Mr. Lieberman. In the process of leafing through them, they go, we think you ought to do the following with regard to your request. So in other words, the dual purpose. So keep going on that. I mean, here basically they're advising in terms of the forfeiture and they're giving her tax advice. What happens chronologically is, in the record, there's a retention agreement initially with Gunderson and Lieberman where it's strictly for what appears to be forensic. Then four or five months later, it appears there's another supplemental retention agreement where it says we're going to do forensic and we're going to do tax stuff, too. And then, presumably, based on their analysis and review of these records that have been placed in their possession by Ms. Liu at the advent of her lawyer. Okay. So now if we didn't – if the records have – we're assuming, of course, that coming from the LLC, just for purposes of this, that there is a Fifth Amendment privilege. And that's a separate – you know, could be a separate issue. But if in the ordinary course, Ms. Liu says to Gunderson, here's my – here's my records, my business records, and I need you to figure out what my tax situation is, not through the lawyer, but just what's my tax situation, would that be governed by Couch and there would be no privilege? If it had been strictly for tax purposes? Yes. I mean, I think the case law – I mean, I don't know that I agree with it, but the Even if you gave it to your lawyer who is a – let's say the example would be – the simple example would be you go to a tax lawyer. No, we gave it to the accountant. No, I understand. But I'm saying it's even worse. If you went to a tax lawyer and said, I want you to do my tax returns, and that's all you're doing, I don't know that that would be protected under the attorney-client privilege because the courts have indicated that strictly tax accounting stuff is an accounting function, not a lawyer function. So what about the dual purpose? The dual purpose is, is if the documents initially are given to lawyer or expert, again, because of – that's what the – there's a phrase. TORF is using a Second Circuit case, I believe, called United States v. Adelman, which the site is 68 Fed Third 1495 out of the Second Circuit. If the documents are being – are used because of the initial retention that is protected by the Fifth Amendment, and then as a consequence or in addition to their use for another purpose that doesn't get the Fifth Amendment protection, then they're still – they're still protected. That at least is how I read TORF. Getting back to what I thought we were here to argue about, which is the only issue that everybody briefed to come up here, and that is the issue of misuse LLCs, whether they are one-person LLCs, whether or not they should be viewed as collective entities, which is what the trial court found, versus sole proprietorships. And one of the other documents that I gave you is an IRS circular. In addition to all of the things that indicate it should be given sole proprietorship treatment, it's you – when you're a one-person LLC, all of your profits and loss are on your 1040, not in a separate tax return. In addition to that, the IRS, which is, I find, very ironic, because Mr. Rustino is here essentially on an IRS investigation. The IRS has found that for single-person LLCs, those people are personally liable for any withholding taxes by employees as opposed to a corporate officer who would not be personally liable for – And that's a tax issue for purposes of legal liability. An LLC shares the characteristics of a corporation, does not it? They really don't, though. You file something with the State that you're going to be an LLC, but you are – They get the prime benefit, limited liability. Right? They get – that's the only – only. Well, that's a big thing. I mean, why do you think all these law firms turned into LLCs? Well, I'm a PC. To get the prime benefit. I'm a PC. We didn't become an LLC. Well, maybe you should go see Mr. Gunderson. Well, except PC – but, you know, but – actually, with lawyers, that's not the way it works. You still – you know, you're still essentially on the hook. So other than that one benefit, and I would agree, it is a benefit, but other than that one benefit, they're treated like – essentially like sole proprietorships. Everything flows to your personal return. You are personally liable for taxes that you don't withhold. Unlike corporate entities, you're not supposed to keep two separate sets of books like corporations. So everything other than that one issue makes it look like a sole proprietorship and not a corporation. So I would suggest to the Court that the Court abused its discretion in finding that an LLC is a collective entity. There's no question that she is a one-person entity. The government's argument here is that she had independent contractor masseuses, all of whom could be viewed as being the ones that might produce these records for purposes of Fifth Amendment, which is, first of all, there's no facts to support it on the record. And second of all, it's somewhat absurd to suggest that a jury is not going to find that Ms. Luke could be the only source of these records and not some independent contractor masseuse who's not an employee but has an independent contractor contract. I have a couple of minutes I'm going to reserve. Thank you. Who gave her the advice, if anybody did, to put $100,000 or whatever it was, $95,000 in a suitcase to go through customs? Well, she didn't end up going through customs, which was, as I understand it, I'm really going into things I don't know anything about. It never was even close to being sent overseas, which is, I think, one of the reasons why the forfeiture didn't go anywhere and she got most of her money back, is because they couldn't prove that she was going to, did or intended to send the money overseas, which would have precipitated a currency transaction report. May it please the Court. My name is Gary Restaino. I'm an assistant United States attorney in the District of Arizona. Ms. Liu's accountant in this case, hired by her lawyer, should be compelled to turn over the preexisting business records from the massage parlors she ran as limited liability companies. There are two reasons advanced in the briefs why that is so, and I will reverse the reasons for the purpose of this argument. First of all, the district court found no inevitable risk of incrimination from the active production of those documents. And so we don't even need to get to the LLC issue. The district court made that factual finding after a review of a privilege log and after in-camera inspection. So to a large extent, the district court is in a better position even than the government to articulate why it is that there is no inevitable risk of incrimination. And that factual finding is entitled to great deference in this analysis. The second reason, in the event that this Court were to find that there was an inevitable risk for these documents used to prepare taxes, then the Court should inquire into the absence of an LLC privilege. These documents, to set the stage, include ledgers and other records of the business. At this point, the attorney-client privilege documents are not on the table. Those have been held out. The work product documents, the accountant's work papers, have been held out. The only things that are at issue here are hundreds of pages' worth of ledgers and other business records, some, according to the privilege logs, we believe to have been prepared by Ms. Liu, hundreds of other pages of which were prepared by Lynne Shy Rawlinson, the outside bookkeeper for the business. And so as a preliminary matter, there's clearly no Fifth Amendment privilege as to the contents of these documents. These are all preexisting business records. They are not compelled in the manner in which you produce them. They're voluntarily created. The Doe case makes this clear. The contents themselves have no protection. It's only if the manner of production would incriminate that this Court should be concerned. Kennedy, was it brought before the district court by the Ms. Liu or her counsel that this is a Fifth Amendment issue or a lawyer privilege issue? All three of those issues were raised, and actually a fourth privilege, a putative tax return preparation privilege which the district court disregarded. That's reflected in the record in this case. The excerpts of record include the briefing of the parties, and the government's And really the focus was the Fifth Amendment privilege with respect to these documents. There was some focus on the underlying protection as well as the act of production. And, of course, it became pretty clear that there was no underlying protection to the substance of the documents. So you are do you agree with the collective entity analysis of the district court, basis on which, in your view, this should be affirmed? Well, as I read the district court's decision, she found, and this is in the order on ER 73, the jury could plausibly conclude that documents sought from Liu were not produced by her. That really is addressing the lack of an inevitability issue regardless of the focus on the entity itself. The district court also addressed the LLC issue. But really the primary basis, as I read that order, is the lack of an inevitability regardless of the form of the business under which she conducted her massage operations. These are also – that's important because these are exactly the types of documents that we would expect to find in the accountant's office when the tax returns were prepared. The case law on whether or not an act of production itself, the manner of production is incriminating, addresses whether or not the existence of unknown documents are going to be disclosed through the act of production or whether the act of production would authenticate the documents. Well, in this case, because of the prior forfeiture action and the production of that report voluntarily, the existence is not at issue. The report at ER 33 and 34 identifies a whole host of documents that are generally reflected in the privilege law. All of those documents are known to the government before that subpoena is issued. In addition, there's really no – no authentication that's going to inevitably result in this case based on the specific facts and circumstances of this case. And the courts make it clear that this is a fact-intensive inquiry. What was the basis for the court's determination that there was no inevitable risk of incrimination? The district court focused on the – what she called the employees or what the defense calls the – what the movement calls the independent contractors, the fact that there are massage therapists at these businesses. And I would refer in particular to ER 33, the third item on the list in the report that was produced by the forensic accountant. That says copies of receipts for massage technicians' deposits with Lew. It's very difficult to see how that particular item could inevitably result in incrimination because that clearly references the massage technicians rather than just Ms. Lew herself. What language are you looking at in the order, sealed order? I'm looking, Your Honor, at ER 73. Let's see. What lines? Lines 4 through 11 generally. Line 7, starting, Lew, while apparently the sole owner of the LLC, has presented no evidence that she's the only employee. It appears highly unlikely that a person could own and operate multiple massage parlors without any employees. And then this is the key line. A jury could plausibly conclude that documents sought from Lew were not produced by her. That really is an issue on a lack of inevitability. And again, it's a lack of inevitability based, as the district court says, on the massage technicians. I would add that the record supports as well the fact that Lynn Chyronson, this outside bookkeeper, can easily authenticate her documents, the hundreds of pages that she produced. Kennedy, does it make any difference if these masseuses are independent contractors or employees? I don't see that it does, Your Honor. The focus here is not on a matter of employment law and the control test as to, as to the standards under which they operate. The issue is, is there another person to whom the manner of production could be, to whom the documents themselves could be imputed? Again, the reason I think this is not a case where we're even close to inevitability is based on the types of documents that are at issue. It would be very clear to see inevitable incrimination if, for example, a subpoena requested an unregistered sawed-off shotgun or stolen mail, things that on their face are inculpatory based on their possession. Business records are not like that and so require a more detailed analysis. And in this case, based on both the existence being disclosed in the report and the ability to authenticate, there is no inevitability. Could you just remind me, if you would, on this factual finding made by the district court here, was that challenged on appeal by the appellant? Your Honor, I think in general the – I'm not sure. Okay. Thank you. I'm not sure how that was captured. Well, I think the appellant did deny that those were employees, if that's what you're telling me. That's, I guess, correct, Your Honor. The appellant does deny that they were employees. But that's why I asked the question. It doesn't matter if that was not him. I think it still really does not matter because the focus is not, again, on the nature of the person that's there, but simply that there were other people there. And again, the district court had the benefit of all of these documents and the report to see that there was no inevitability. In addition, and really probably the primary reason is, these documents were used by an accountant to prepare taxes. And as this – as Judge Siler indicated, there really can't be a way for lawyers to advise clients with tax problems to route their documents to the accountant through them to completely eliminate the possibility of tax enforcement. This case, of course, presents a dual scenario, as Ms. Liu's counsel indicates. The government cited to the Torf case in the standard of review section in its brief, and we do believe that it's also very relevant for the Court's analysis here today. The Torf case follows really the Fisher and the Terry grand jury cases. The issue for whether or not there is – there is a privilege is not just whether the documents are produced for the purpose of giving legal advice, but rather when they are necessary for the purpose of giving legal advice. And if we look at Torf in this dual-purpose doctrine, it supports the government's position, because Torf essentially dealt with an environmental compliance issue in which there was some advice and some remediation efforts. Torf contrasted that with a tax scenario. And it said in the tax scenario, citing to Frederick, a Seventh Circuit case, there is a readily distinguishable purpose because those taxes have to be paid. The accountant has to rely on the documents in order to file the taxes, and those documents cannot possibly be privileged. So we agree that Torf is relevant to the analysis, but we would ask the Court to look at the Torf's distinction between environmental compliance and the tax scenario that we have in front of the Court today. Well, I think you've covered it pretty well so far. I do want to address the issue of the LLCs in this case, because we do believe that a wholly separate way of finding this is that a limited liability company is an artificial entity that has no privilege. As Judge Pragerson said, the prime benefit of the limited liability company is the liability shield. There is a tax implication that does treat, for tax purposes, the individual and the entity as being the same, but that's really not dispositive of this analysis. Indeed we have that in other situations, too, don't we, in the tax code? Well, it's not on the record in this case, but certainly some corporations are able to. S corporations. That's correct. It's not on the record. It's a question of law. I would say that's right, Your Honor, and I do believe that the law would support that an S corporation also can flow directly through to the individual. And so an LLC really isn't any different in these circumstances. Ms. Liu did, was the manager, the sole member, and the statutory agent. So there's no question that she is the sole controlling person there, but there's also no question that she had these massage therapists working for her, and ER-68 is an attachment to one of the government submissions in the district court which shows that Ms. Liu held herself out as the president of Lotusland LLC for the purpose of a citizenship application. Now, the Bellis case, dealing more with partnerships, outlines probably the best of all the cases, the factors in whether or not there is a collective entity. And the three main ones are a formal institutional arrangement, an organizational structure imposed by the State, and holding oneself out to third parties as that There's certainly a formal institutional arrangement because of the liability shield. Indeed, the documents that the move-in cited on pages 8 to 9 of the LLC documents note that the individual doesn't even own the LLC assets and notes that the corporate limitation on personal liability. And so there is clearly an artificial construct and a formal institutional arrangement. There is some organizational structure. This is not an LLC does not have to report to the State as much as a corporation does, but there are significant reporting requirements. There is a requirement of answering questions that State regulators ask, and that certainly is more, significantly more, than a sole proprietor would have. And finally, she held herself out to third parties as this independent entity, in particular on that citizenship application. And so for those reasons, the government believes that on the facts on this case, this LLC, Lotus Land LLC, operates sufficiently as a collective entity to preclude the use of the privilege. The government also, of course, believes that under these circumstances there is no inevitable risk of incrimination. I have covered most of my prepared remarks on that. I'd like to just address the Couch, Daffin and Mangese cases briefly. I think the movement has signaled to the Court the key distinction between Couch, Daffin and Mangese, that is that in those cases the lawyer was not directing the production of the books and records. The government believes, again, based on the procedural history of this case, winnowing out already the attorney-client privilege and the work product privilege, and the absolute separable purpose with the taxes, that that is a distinction without any meaningful difference. And furthermore, the Mangese case talks about delegation by the taxpayer to another person, and we really do have here a delegation from Ms. Liu to Clifton Gunderson, and the involvement of the lawyer in that shouldn't shield her from being investigated for the very taxes that that accountant eventually filed on her behalf. I see that I have time remaining, but I am finished with my remarks unless there are further questions from the panel. Kennedy, you can put it in the bank, and next time you come here we'll give you an extra five minutes. Thank you, Judge. Let me address one issue, and that's this issue of the inevitability. If one reads the record and specifically the order of Judge Bolton, absent, noticeably absent from her record, her order is any facts upon which she can claim that any of these independent contractors would be in any position whatsoever to have access to the records or an ownership issue on them or anything else. The records at issue here, at least as to the privilege log, primarily are general ledgers for various months in 2003, profit and loss statements. There's a log of documents used to substantiate Ms. Liu's ability to accrue cash, including logs, et cetera. So we're not talking about things from the report from the independent contractor. We're talking about the kinds of financial documents that only an owner would create, and there is not – I mean, I don't know where the facts are, and that's why I believe that Judge Bolton was clearly erroneous on her factual finding. There are no facts to support that there is some type of – that a jury would not inevitably find that Ms. Liu created these documents, possessed them, and gave them to these accountants. And I urge, if the government has any time left, then to point to this court in the record where there's any fact that's been proven or even submitted to the court that would allow the judge to make that kind of finding. Would this case be any different if, instead of LLC, Ms. Liu operated as a corporation and she was the sole owner of all the stock and it took on the – all the other aspects of a regular corporation? Again, Judge, it's – I mean, according to the case law, the circuit courts and the Supreme Court have found that corporations, because they have a separate entity, separate book, separate reports, et cetera, that they do not enjoy the Fifth Amendment rights that a sole – Even if she was the sole owner? Right. Even a – I believe – Even if it's a subject, right? A single-member corporation, I believe, the law says no. It's strictly whether an LLC in this case is in that category or in the sole proprietor category. Except, of course, Justices Thomas and Scalia in the Hubble case who indicate that the idea that papers do not independently enjoy a Fifth Amendment protection is court-made law, not what the framers of the Constitution intended, and that, at least in their opinion, documents – any document created by an individual has the Fifth Amendment protection based on at least Justice Thomas's reading of – presumably of the Federalist papers, et cetera. That's in the concurring opinion in Hubble. All right. Thank you. This matter is all matters we've heard this morning. We'll now stand submitted and we'll recess until 9 a.m. tomorrow morning. All rise. This court in this session stands in recess. Thank you.
judges: Pregerson, Siler McKeown